| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**WASSERMAN, JURISTA & STOLZ, P.C.**<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Phone: (973) 467-2700<br>Fax: (973) 467-8126<br>**Counsel to Debtors-in-Possession**<br>**DANIEL M. STOLZ, ESQ.**<br>**LEONARD C. WALCZYK, ESQ.** | |
| **In Re:**<br><br>**LIZZA EQUIPMENT LEASING, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 19-21763<br><br>Honorable Michael B. Kaplan |
| **In Re:**<br><br>**AZZIL GRANITE MATERIALS, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 19-21764(MBK) |
| **In Re:**<br><br>**MAGNOLIA ASSOCIATES, LLC,**<br><br>Debtor. | Chase 11<br><br>Case No. 19-21766(MBK) |

**DEBTORS' MOTION FOR THE ENTRY OF INTERIM AND FINAL CONSENT ORDERS AUTHORIZING THE USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION, GRATING RELATED RELIEF AND SCHEDULING FINAL HEARING THEREON**

TO:  TO THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY JUDGE
FOR THE DISTRICT OF NEW JERSEY

Lizza Equipment Leasing, LLC ("LEL"), Azzil Granite Materials, LLC ("Azzil") and Magnolia Associates, LLC. ("Magnolia", together with Azzil and LEL the "Debtors"), by and through its proposed undersigned Counsel, hereby submits this Motion (the "motion") for entry of an Interim Consent Order (the "Interim Cash Collateral Order"), and after a final hearing on the

Motion (the "Final Hearing"), the entry of a Final Order (the "Final Cash Collateral Order"), (a) authorizing the Debtor to use cash collateral subject to the lien of New York Commercial Bank ("NYCB" or "Lender"), (b) grating adequate protection to NYCB with respect to such use of cash collateral and any diminution in value of NYCB; interests in the pre-petition collateral (c) prescribing the form and manner of notice setting the time for the Final Hearing and (d) granting certain related relief.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are §§ 105(a) and 363(b) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

4. On June 12, 2019 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. The Debtor is operating its business as debtor-in-possession ("DIP") pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee of unsecured creditors has yet been appointed.

6. A further description of the background of the Debtor and the events leading up to the filing of this case is provided in the Declaration of Carl J. Lizza, III in support of First Day Motions,, which is on file with the court as docket no. ___ and incorporated by reference herein.

## THE DEBTORS PROPOSED USE OF
## CASH COLLATERAL AND ADEQUATE PROTECTION

7. While the Debtors are not seeking, under this Motion, an immediate right to borrow under a DIP facility, the Debtors may well ask for such authority on an expedited basis as the Debtors review their cash needs.

8. On or about June 1, 2016, the Lender made a loan to Magnolia in the original principal amount of $4,080,000 (the "**Magnolia Loan**"), which is secured by a mortgage against Magnolia's property located at 9025 State Route 4, Whitehall, New York (the "**Property**").

9. On or about June 1, 2016, Azzil executed a guaranty of all of Magnolia's obligations to the Lender with respect to the Magnolia Loan (the "**Magnolia Guaranty**").

10. On or about May 1, 2018, the Lender made a loan to Intercounty Paving Associates LLC ("**IPA**") in the original principal amount of $7,500,000 (the "**IPA Loan**").

11. On or about May 1, 2018, Magnolia, Azzil and LEL each executed a guaranty of all of IPA's obligations to the Lender with respect to the IPA Loan (the "**IPA Guaranties**").

12. On or about October 9, 2018, Azzil, Magnolia and LEL all executed in favor of the Lender a Reaffirmation of their prior Guaranties to the Lender.

13. The Magnolia Guaranty and the IPA Guaranties were all secured by the assets of Azzil, Magnolia and LEL.

14. As of the Petition Date, the Lender was owed the amount of approximately $10,180,848.83 in connection with the Magnolia Loan and the IPA Loan (the "**Pre-Petition Debt**").

15. By virtue of the documents entered into as set forth above and all other documents entered into in connection with the Magnolia Loan and the IPA Loan (the "**Existing**

**Agreements**"), the Pre-Petition Debt is secured by a security interest and a lien upon the Property and all of the Debtors' assets (the "**Pre-Petition Collateral**").

16. As of the Petition Date, there were no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any portion of the Pre-Petition Debt, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, or subordination (contractual, equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

17. The Debtors agree and acknowledge that the cash proceeds generated from the Debtors' operations represent income, proceeds, products, rents, or profits of the Pre-Petition Collateral and can be treated as "cash collateral" within the meaning of Bankruptcy Code § 363(a) (collectively, the "**Cash Collateral**").

18. The Debtors further agree that the Lender has a first priority perfected lien and security interest in the Cash Collateral in accordance with Bankruptcy Code §§ 361, 363(a) and 552(b).

19. Pursuant to Bankruptcy Code § 363(c)(3), the Debtors cannot use the Cash Collateral without the consent of the Lender or an Order of the Bankruptcy Court.

20. The Debtors cannot meet their ordinary operating expenses or maintain and preserve the value of their businesses without the use of the Cash Collateral.

21. The Lender is entitled to receive certain adequate protection in respect of the Debtors' use of the Pre-Petition Collateral to compensate for any decline in the value thereof, resulting from (a) the use of the Cash Collateral, and (b) the use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral (the amount of any such diminution being referred to hereinafter as the "**Adequate Protection Obligations**").

22. The terms for the Debtors' use of Cash Collateral have been negotiated in good

faith and at arm's length, and reflect the Debtors' exercise of prudent business judgment.

23. As of the Petition Date, cash proceeds generated in the Debtors' daily operations are deposited into designated bank accounts, which are a significant source of cash for the Debtor's operations, subject to availability from NYCB under the Prepetition Loan and Guarantee.

24. The Debtors require the ability to use cash and the proceeds of existing accounts receivable and other collateral (the "Cash Collateral") to maintain the operation of its business and to preserve the value as a going concern. These essential items, however, constitute part of the collateral for the Prepetition Loan and, therefore, may not be used in support of the Debtors' ongoing business activities absent compliance with §363 of the Bankruptcy Code. Without authorization to use the Cash Collateral under §363(c)(2)(B) of the Bankruptcy Code, the Debtors would be left without their primary source of working capital.

25. The Debtors require immediate authorization to use NYBC's Cash Collateral in order to continue operating its business and preserve its value for the benefit of all creditors. By having immediate access to cash that is sufficient to enable the Debtors to operate their business, NYCB's Prepetition Collateral will be preserved and enhanced.

26. Therefore, the Debtors respectfully request entry of the consent order submitted herewith pursuant to §§ 361 and 363 of the Bankruptcy Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing the Debtor to use Cash Collateral to pay overhead, operating expenses, and ordinary course obligations necessary to maintain and preserve the going-concern value of the Debtor's assets and business and to administer its estate, including, but not limited to, using Cash Collateral to pay: (A) any pre-petition operating and other expenses approved by the court; (B) the post-petition operations of the Debtor's business as indicated on the budget annexed hereto as Exhibit "A"; and (C) all costs

and expenses arising in connection with the administration of its estates; and (ii) granting adequate protection to NYCB in respect of such use in the form of a replacement first priority security interest and lien upon post-petition accounts and the proceeds thereof, to the extent of any diminution in value of NYCB's interest.

### RELIEF REQUESTED

27. By this Motion, and pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and §§ 361 and 363 of the Bankruptcy Code, the Debtor respectfully requests the court: (a) to permit the Debtor to use NYCB's Cash Collateral and grant adequate protection therefor; and (b) prescribe the form and manner of notice for, and schedule a final hearing (the "Final Hearing"), to consider entry of a Final Order approving the use of cash collateral.

### THE COURT IS AUTHORIZED TO PERMIT THE USE OF CASH COLLATERAL PENDING APPROVAL AT A FINAL HEARING

28. Pursuant to §363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use Cash Collateral without the consent of the secured party or approval from the court. 11 U.S.C. §363(c) provides, in relevant part: "(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless: (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section. Pursuant to §361 of the Bankruptcy Code, forms of adequate protection include, without limitation: (a) lump sum or periodic cash payments to the entity holding an interest in the property to be used to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; or (c) such other relief as will result in the realization by the entity

6

of the indubitable equivalent of such entity's interest in the property. 11 U.S.C. §§ 361, 363.

29. Exactly what constitutes adequate protection must be decided on a case-by-case basis. In re Swedeland Development Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process. Id.

30. The Debtors propose to grant additional adequate protection to NYCB as set forth below.

31. Adequate Protection Liens. As adequate protection for any diminution in value of the Lender's interests in the Pre-Petition Collateral, and to the extent that the Cash Collateral is utilized by the Debtors, for the purposes of providing adequate protection within the meaning of Bankruptcy Code §§ 361 and 363, Debtor seek authorization to grant to the Lender (effective and perfected as of the Petition Date and without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, financing statements or other documents) a valid and perfected replacement security interest in, and lien on (the "**Adequate Protection Liens**"), all of the right, title and interest of the Debtors in, to and under all present and after-acquired operating assets of the Debtors (both tangible and intangible) and rights of any kind or nature of the Debtors, including all Cash Collateral of the Debtors (collectively the "**Collateral**"). The Adequate Protection Liens could continue to constitute a first priority perfected lien on all of the Collateral as to which the Lender had a valid and perfected first priority lien as of the Petition Date.

32. Extent of Adequate Protection Liens. Debtors agree that the Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in this case, or any case

7

under chapter 7 of the Bankruptcy Code upon the conversion of these chapter 11 cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Case**"). Except as provided herein, the Prepetition Liens and Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in this case or any Successor Case, and shall be valid and enforceable upon the dismissal of this case or any Successor Case. The Adequate Protection Liens shall not be subject to Bankruptcy Code §§ 510, 549 or 550. No lien or interest avoided and preserved for the benefit of the estate pursuant to Bankruptcy Code § 551 shall be made *pari passu* with or senior to the Prepetition Liens or Adequate Protection Liens.

33.  Perfection of Adequate Protection Liens. The Consent Order submitted herewith, should it be entered by the Court, shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable law) the Adequate Protection Liens, or to effect the priorities granted herein. The Debtors are authorized and directed to execute and deliver promptly to the Lender any such mortgage, financing statement or other instrument or document as the Lender may reasonably request. The Lender may file photocopies of the Consent Order as a financing statement or mortgage with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statement, notices of lien, mortgage or similar instrument.

34.  Adequate Protection Superpriority Claims. As further adequate protection for the Debtors' Adequate Protection Obligations, the Lender is to be granted as and to the extent provided

8

by Bankruptcy Code §§ 503(b) and 507(b), allowed superpriority administrative expense claims in these chapter 11 cases and any Successor Cases in the amount of the Adequate Protection Obligations (the "**Adequate Protection Superpriority Claims**").

35. <u>Priority of Adequate Protection Superpriority Claims</u>. The Adequate Protection Superpriority Claims shall have priority over all other administrative expense claims and unsecured claims against the Debtors' estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code §§ 326, 328, 330, 331, 364, 365, 503(a), 506(c), 507(a), 507(b), 546(d), and 726 (to the extent permitted by law).

36. <u>Adequate Protection Payments</u>. As further adequate protection for the Debtors' use of Cash Collateral, on or before the fifth (5th) day of each month, the Debtors shall pay to the Lender the sum of $62,672.42, representing the amount due per month under the Magnolia Loan documents. These adequate protection payments shall be applied to the Debtors' obligations to the Lender in accordance with the Magnolia Loan documents.

37. The granting of the replacement priority security interest in and lien on post-petition Collateral satisfies the requirements of adequate protection under §361 of the Bankruptcy Code. Failure to approve the use of Cash Collateral requested herein will have serious consequences for the Debtor, its estate, vendors, employees and all other parties in interest, including NYCB.

## NOTICE

38. *In accordance with Section 363(c)(3), the Debtors hereby request that this Court enter the annexed Consent Order at an interim hearing authorizing the Debtors' use of cash collateral, and schedule a final hearing within fourteen (14) days, as permitted by F.R.B.P. 4001, at which time any objections, if any, to the Debtors' continued use of cash collateral can*

*be heard.*

39.   The Debtors seeks the requested interim relief and proposes to serve the Debtors' twenty (20) largest creditors; the Office of the United States Trustee, the New Jersey and Federal Tax Authorities, counsel to the Debtors' pre-petition secured creditors, and all parties who have filed a Notice of Appearance. The Debtors respectfully submit that such service will constitute good and sufficient service.

**WHEREFORE**, the Debtor respectfully requests that the court: (i) authorize the use of Cash Collateral; (ii) prescribe the form and manner of notice for, and schedule a final hearing under Bankruptcy Rule 4001(c) to consider entry of a Final Order approving the use of cash collateral; and (iii) grant the Debtor such other and further relief as may be just and proper under the circumstances.

**WASSERMAN, JURISTA & STOLZ, P.C.**
Attorneys for Debtors

By: _____
LEONARD C. WALCZYK

Dated: June 14, 2019